IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Brian Keith Crosby, ) | C/A No.: 1:12-440-MGL-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| John Ozmint, former Director of South ) | REPORT AND RECOMMENDATION |
| Carolina Dept. of Corrections; John/Jane ) | |
| Doe #1 of the Correspondence Review ) | |
| Committee; John/Jane Doe #2 of the ) | |
| Correspondence Review Committee; ) | |
| John/Jane Doe #3 of the ) | |
| Correspondence Review Committee, ) | |
| individually and in their official ) | |
| capacities, ) | |
| ) | |
| Defendants. ) | |

Brian Keith Crosby ("Plaintiff"), proceeding *pro se* and in *forma pauperis*, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while incarcerated at the Perry Correctional Institution ("PCI") of the South Carolina Department of Corrections ("SCDC"). Plaintiff sues former SCDC director John Ozmint, as well as three unknown[1] members of the SCDC's Correspondence Review Committee ("CRC") (collectively "Defendants"). This matter is before the court on the following motions: (1) Plaintiff's motion for summary judgment or default [Entry #43], and (2) Defendants' motion for summary judgment [Entry #44].

---

[1] Defendants' brief indicates that the three members of the Correspondence Review Committee were Dennis R. Patterson, Gary Boyd, and Michael Truesdale, although Plaintiff has not moved to substitute these parties.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions are dispositive, this Report and Recommendation is entered for review by the district judge.

I.      Factual Background

Plaintiff alleges that on June 6, 2008, he placed an order for "a couple of publications of an artistic nature for educational purposes." [Entry #1 at 4]. On June 17, 2008, the mailroom at PCI received two books that were shipped to the Plaintiff. *Id*. The mailroom withheld one of the books, entitled "Great Fantasy Art Themes from the Frank Collection" ("the Book"), because it contained nudity and therefore required further review by the CRC in accordance with SCDC Policy No. PS-10.08 entitled "Inmate Correspondence Privileges" (the "Policy") *Id*. Plaintiff was notified that the Book was referred to the CRC for review. *Id*. Upon review, the CRC determined that the Book was prohibited by Section 20.1.6 of the Policy, which applies to:

> Sexually explicit material, publications, or material that features nudity which by its nature or content poses a threat to the security, good order, or discipline of the institution, or which facilitates criminal activity. Sexually explicit material includes, but is not limited to actual or simulated homosexuality, sadomasochism, masochism, bondage, bestiality and sexual activities involving children. It also includes pictorial depictions of actual or simulated sexual acts including sexual intercourse, oral/anal sex, or masturbation; or excretion in the context of sexual activity; or lewd exhibitions of uncovered genitals in the context of masturbation or other sexual activity. (Note: "Features" as used in this paragraph means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues. "Nudity" . . . means a state of undress so as to expose the human male or female genitals, pubic area, or buttocks

> to include the exposure with sheer or see-through covering or the showing of the female breast to include exposure with sheer or see-through covering. This prohibition shall not apply to patently medical, artistic, anthropological, or educational commercial publications, including, but not limited to National Geographic, works of art displayed in public galleries, anatomy texts, or comparable materials.).

[Entry #48-3 at 16]. Specifically, CRC member Dennis Patterson attests that the Book's cover, title page and contents contain "explicit male and female nudity including exposed female breasts as well as genitals and buttocks," and "depictions of sexual acts as well as acts of sadomasochism, masochism, bondage, and bestiality." [Entry #44-2 at ¶ 10]. As a result, Plaintiff was notified on July 2, 2008, that the Book had been disapproved. [Entry #1-1 at 5]. Plaintiff claims Defendants violated his First, Fourth, and Fourteenth Amendment rights. [Entry #1 at 7–8].

Defendants filed their motion for summary judgment on October 8, 2012. [Entry #44]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendants' motion. [Entry #45]. Plaintiff filed a timely response to Defendants' motion on November 15, 2012. [Entry #47]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant Defendants' motion for summary judgment.

II.     Discussion

    A.     Plaintiff's Motion for Summary Judgment/Default

Plaintiff filed a motion entitled "Motion for Summary Judgment: Entry of Default Against Defendants" based on his claim that Defendants had failed to respond to his

discovery requests. [Entry #43]. Defendants responded to the motion arguing that they had objected to Plaintiff's discovery requests as untimely, and Plaintiff had not re-served the discovery requests after the undersigned granted Plaintiff's request to extend the discovery deadline. [Entry #47]. Defendants' response to the motion also states that they served responses to Plaintiff's discovery on October 9, 2012. *Id.* Plaintiff did not file a reply.

It appears that Plaintiff's motion is, in essence, a motion to compel, which is now moot in light of Defendants' undisputed assertion that they have since served Plaintiff with responses. To the extent Plaintiff seeks judgment against Defendants based on the alleged failure to timely serve discovery responses, such relief is not ordinarily available for failure to timely respond to discovery, and the undersigned recommends his motion [Entry #43] be denied.

   B.  Defendant's Motion for Summary Judgment

     1.  Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

      2.     Analysis

           a.     No Constitutional Deprivation

Plaintiff claims that Defendants' prohibition of the Book violates his First, Fourth, and Fourteenth Amendment rights.

As a prison inmate, Plaintiff retains certain First Amendment rights. *Thornburgh v. Abbott*, 490 U.S. 401, 407–408 (1989). However, an inmate's constitutional rights are not unrestricted. Prisons may adopt regulations that infringe upon an inmate's constitutional rights as long as the regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 87 (1987). In order to determine whether the regulation relied on by Defendants is constitutionally permissible, the court must consider four factors: (1) whether the disputed regulation is logically connected to the legitimate government interest invoked to justify it; (2) whether the inmate has alternative means of exercising the right in question; (3) the impact that accommodation of the asserted right would have on other inmates, prison officials, and the allocation of prison resources; and (4) whether there is a ready alternative that would fully accommodate the inmate's rights. *Turner*, 482 U.S. at 89–90. When applying these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation is unconstitutional. *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993).

Incoming mail in the SCDC is governed by the Policy, which includes restrictions on the receipt of sexually-explicit material. Patterson attests that:

> SCDC prohibits inmates from possessing sexually explicit materials and publications for a number of reasons. Such materials tend to decrease institutional security and create potential conflicts among inmates. The materials may become a currency of sorts that can be used by inmates for the procurement of favors, such as assaults on other inmates, or contraband, such as drugs and weapons. The materials can also incite fights among

6

> inmates, whereby inmates not only fight over possession of such materials but also fight when unflattering comparisons are drawn to the wives, girlfriends or mothers of other inmates. Possession of sexually explicit materials can also have a detrimental impact on the rehabilitation of inmates, including sex offenders. Further, the sexually explicit materials may be used to openly masturbate in front of female employees or to otherwise sexually harass the officers.

[Entry #44-2 at ¶ 6]. T

The undersigned finds that the restriction of sexually-explicit materials in a prison setting is logically connected to the legitimate governmental interests of upholding the security of the institutions, preventing disturbances and fights, preventing the use of sexually explicit materials as a type of barter, discouraging criminal and inappropriate sexual behaviors, fostering rehabilitation of the inmates including sex offenders, and preventing sexual harassment of staff. *Id*.

The undersigned finds Plaintiff has alternative means of exercising his first amendment rights because he is allowed to purchase and receive publications that do not contain sexually-explicit material. With regard to the third *Turner* factor, the undersigned finds reasonable Patterson's explanation explaination that "possession of sexually explicit materials can also have a detrimental impact on the rehabilitation of inmates, including sex offenders. Further, the sexually explicit materials may be used to openly masturbate in front of female employees or to otherwise sexually harass the officers." *Id*. Finally, the undersigned finds that no ready alternatives exist. Applying the *Turner* factors, the undersigned finds the SCDC's prohibition of sexually-explicit materials is reasonably related to legitimate penological interests.

In his response, Plaintiff does not argue that the policy is unconstitutional, but rather argues that the last sentence of the policy makes an exception for patently artistic publications and contends that such exception applies to the Book. Defendants respond that the exception does not apply to the Book, pointing to page 11 of the Book where the authors write as follows: "We've never been able to find our sort of paintings in traditional art galleries . . . ." [Entry #44-2 at ¶ 11]. Even if the Book constituted an artistic publication covered by the exception to the policy, Plaintiff has still failed to show that the SCDC's prohibition of the book based on its sexually-explicit content constitutes a constitutional deprivation. It is well-settled that "[a]n agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process." *Bowens v. North Carolina Department of Human Resources*, 710 F.2d 1015 (4th Cir. 1983); *see also*, *Garraghty v. Commonwealth of Virginia*, 52 F.3d 1274 (4th Cir. 1995).

Plaintiff cannot show that prohibition of the Book constitutes a violation of his Fourth Amendment rights, as "[p]risoners have no legitimate expectation of privacy and the Fourth Amendment's prohibition on reasonable searches and seizures does not apply in the prison context." *Sturkey v. Ozmint*, No. 8:08–2758–MBS, 2009 WL 2843322, at *2 (D.S.C. Aug. 31, 2009); *see also Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (holding that inmates do not have a reasonable expectation of privacy in their cells and therefore cannot be subjected to an illegal search).

Plaintiff has also failed to show that the prison regulation has created a liberty

interest based on the policy's term that it "shall not apply to patently medical, artistic, anthropological, or educational commercial publication including but not limited to National Geographic, works of art displayed in public galleries, anatomy texts, or comparable materials." This exception leaves room for interpretation as to whether a publication is patently artistic and the CRC has determined that the exception does not apply. Therefore, even if Plaintiff could show that the exception created a liberty interest, he has not shown that such an interest was violated, as the Book itself indicates that the "art" found in the book is not the sort typically displayed in public galleries. For the foregoing reasons, the undersigned recommends Defendants be granted summary judgment.

                b.      Supervisory Liability

Defendant Ozmint contends that he is not liable as there is no evidence that he participated in the CRC's decision to prohibit the Book and he cannot be held liable on a theory of *respondeat superior* or vicarious liability. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization.

*Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Ozmint was personally responsible for the CRC's decision, but only argues that he informed Ozmint of the issue by correspondence of April 30, 2010. [Entry #48 at 10]. Plaintiff has not shown that Ozmint was deliberately indifferent to, or tacitly authorized, the decision of the CRC, and he has therefore failed to show that Ozmint is liable on a theory of *respondeat superior* or supervisory liability.

          c.     Statute of Limitations

Given the recommendation on the merits of this matter, the undersigned has declined to address Defendants' statute of limitation defense.

III.    Conclusion

For the foregoing reasons, the undersigned recommends Plaintiff's motion for summary judgment or default [Entry #43] be deemed moot or denied and Defendants' motion for summary judgment [Entry #44] be granted and this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

*/s/ Shiva V. Hodges*

February 28, 2013                            Shiva V. Hodges
Columbia, South Carolina              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).